### THE STOCKHOLDERS OF THE COCHITUATE BANK *vs.* EZEKIEL R. COLT & others, Receivers.

Billholders are not entitled to a priority over other creditors, in the distribution of the assets of an insolvent bank, receivers of whose property have been appointed under *St.* 1851, *c.* 127.

PETITION, filed on the 22d of August 1854, by the stockholders of the Cochituate Bank, representing that the respondents, appointed receivers of said bank under *St.* 1851, *c.* 127, § 5, (upon the representation of the bank commissioners that the condition

of the bank was such as to render its further progress hazardous to the public and to those having funds in its custody,) had made their report, and had admitted that there were various classes of creditors of the bank, billholders, depositors, and others; and had shown that the assets in their hands, out of which a dividend might be made, were insufficient to pay all said creditors in full; and praying the court to order and decree that the legally proved claims of the billholders should have priority over the claims, of all other classes of creditors, and be paid in full, before making or paying any dividends to any other creditors whatsoever.

The chief justice disallowed the petition, but, at the request of the stockholders, reserved the question thereby presented, for the consideration of the full court, the parties agreeing that it might be argued in writing, and be considered in any county, or at chambers, and the result certified.

*W. Whiting*, for the petitioners. There is no decision of this court tending to show that billholders are entitled to any priority over other creditors, in the distribution of the assets of an insolvent bank. But it is generally understood in the community that stockholders in a bank, whose charter has expired, or which has stopped payment, are not liable to assessment for the debts of the bank, under Rev. Sts. *c.* 36, § 31, and *St.* 1849, *c.* 32, if there are assets enough to pay the billholders in full; and it would seem to be a great hardship that innocent stockholders, who, in fact, have little to do with managing the affairs of the bank, should not only lose all their interest in the stock, but also be liable to pay as much more besides.

It will diminish the security of the public as holders of bank bills, and the confidence of the community in the paper currency, if the billholders are not entitled to a priority in the distribution of the assets of the bank, but are obliged to rely in whole or in part on the solvency of the stockholders. And it will greatly diminish the value of bank stock, and its security as an investment, if the stockholders are required to make up all the deficiency which a general dividend does not happen to pay to billholders.

*W. Dehon,* for the respondents. The proceedings under *St.* 1851, *c.* 127, are a statute process for winding up the affairs of an insolvent bank, and distributing its assets among creditors, according to the course of chancery proceedings. And the general and universal rule (with few exceptions not material to this case) is, that all creditors, entitled to payment out of an insolvent estate, shall share proportionably, when it will not suffice to pay all in full. This rule has been repeatedly recognized, and applied to cases of banks, by this court. *Harris* v. *First Parish in Dorchester,* 23 Pick. 112. *Atlas Bank* v. *Nahant Bank,* 23 Pick. 488, and 3 Met. 586. *Commonwealth* v. *Phœnix Bank,* 11 Met. 147. *Grew* v. *Breed,* 10 Met. 569. So far as the records show, in all the cases of insolvent banks settled under the directions of this court, dividends have been ordered to be paid to all creditors *pro rata,* making no distinction in favor of billholders.

The claims of billholders have no particular equity over those of other creditors. Each has an equally valid contract and right of action. Each has given an equally valid consideration for his contract, and the funds of the bank must be supposed to have been proportionably benefited or increased by such consideration. The policy of the statutes, imposing a personal liability on stockholders for unpaid bills, in order to secure the appointment of skilful directors and good management, would be counteracted to a considerable extent, if the stockholders could escape liability whenever the assets were sufficient to pay the bills in full, leaving other creditors, equally meritorious, unprovided for.

There is reason to contend that a *pro rata* distribution is provided for by the statutes. By the Rev. Sts. *c.* 44, § 10, the receivers of all corporations, whose charters have expired, or been annulled by forfeiture or otherwise, shall pay all debts *pro rata,* if the funds do not suffice to pay the whole. By *c.* 36, §§ 1, 2, all banks thereafter created shall be subject to all the liabilities contained in *c.* 44. And by the proceedings against this bank under *St.* 1851, *c.* 167, § 5, its charter has expired or been annulled, within the meaning of the Rev. Sts. *c.* 44, § 10.

It is true that in *Commonwealth* v. *Phœnix Bank,* 11 Met. 155, the court said that the distribution of the assets of insolvent banks was not provided for by *St.* 1838, *c.* 14, (repealed by *St.* 1843, *c.* 43, and substantially like *St.* 1851, *c.* 127,) but must be regulated by the general principles of equity. But it does not appear that the suggestion now made in regard to Rev. Sts. *c.* 44, § 10, was then brought to the consideration of the court. If that section does not provide a rule for this case, it certainly establishes the policy of the law in similar cases.

The decision was made at Lenox, September term 1854.

SHAW, C. J. The question in the present case, having arisen in a case before one judge, where a great number of persons were interested, and where a considerable amount of money was lying in the hands of receivers, to which creditors would be entitled, as soon as the question should be disposed of, the court were desired by all parties interested to take it into consideration, as soon as the course of the court and other engagements would permit. This they have done, and it devolves on me to state the opinion of the court.

It is a little remarkable, that in the several cases which have arisen under the present act, and an act previous thereto, which had been repealed, and substantially reënacted, this question has not been directly settled. But in looking at the several cases, there seems to be no one directly in point.

As between the bank, as a debtor, on the one side, and the holders of bills and other creditors, on the other, the bank owes to each the whole amount. The difficulty arises when it turns out that the bank is insolvent, and is unable to pay the whole, when it becomes a question solely among different classes of creditors. In the absence of positive law, of some well established rule of policy founded on general convenience, all creditors have a right to share in the fund in proportion to the amount of their respective debts. The considerations for their respective debts have equally gone into the hands of the common debtor, and contributed proportionably to form the fund of which the assets in the hands of the receivers now form the only residuum. Why should they not share it in the same proportion? Or, to state the same

point in another view, as there must from necessity be a loss, for which no creditor is responsible, all must bear that loss propor-tionably. Such is the general rule in regard to similar cases of common loss, as of bankrupts, living and deceased insolvents. In these, there are some limited and well defined exceptions founded on considerations of policy, and in general declared by positive law. As for instance, in cases of deceased insolvents, expenses of last sickness are preferred, in deference to the dic-tates of enlightened humanity, to secure a sick but poor person from suffering *in extremis*. So taxes due to the government are in some cases preferred, to secure the public revenue, pur-suant to the maxim *salus republicæ suprema lex est*.

This plain principle of equity is supported by authorities, too numerous and uniform to require particular citation. The rule of distribution is, " equality is equity." This is the general rule ; preference is the special exception ; and it is incumbent on those who claim such preference to establish it.

It is stated, in the argument, that there is a general impression in the community, that the law has given this priority to creditors who have given credit to banks by receiving their bills as money, and that it was intended to give greater security to bank notes, because they pass as money, and in effect constitute the currency of the state. This impression may have arisen from the fact that the general law has made some provision, and that a some-what extraordinary one, for the better credit and security of bank notes, by providing that, when other means have failed, the stockholders, in their individual capacity, to an amount equal to that of their stock, shall be held liable to such holders of bills. Rev. Sts. *c.* 36, § 31. *St.* 1849, *c.* 32. But it has been held that such holders of bills must first present their claims, and receive a dividend from the general assets of the bank, and that individual stockholders are liable only for the deficiency of such dividend received. *Grew* v. *Breed*, 10 Met. 569.

As all the duties and liabilities of banks, and those connected with them and responsible for them, are regulated by statute law, including the revised statutes, and several acts since the revised statutes, if there were any other special provision in favor

of holders of bills, it would not be difficult to find it; but there appears to be none.   On the contrary, by Rev. Sts. *c.* 44, § 10, being the statute regulating corporations, and to which chapter banks are made liable, (Rev. Sts. *c.* 36, §§ 1, 2,) the general rule of distribution is declared.   Receivers are to distribute the funds of insolvent corporations ratably among all the creditors.   It is true that this applies to insolvent corporations generally, and it may not be presumed that the legislature had banks and bank notes specially in view; still, as the two statutes are connected, and form one system, and as a general rule is thus declared, if a general exception of bank bills had been intended, it would have been expressed in one or the other of these chapters. Upon the most careful examination, no such exception or qualification of the general rule is found.

On the whole, the court are all of opinion that the holders of bank bills, proving their claims against an insolvent bank, in proceedings against it, under an order for the appointment of receivers, are not entitled to a preference over depositors and other creditors, in the distribution of its assets, and that the petition praying for the allowance of such preference must be dismissed.                                        *Petition dismissed.*